John Shaw Curry Attorney for Gadsden County Commission Quincy
QUESTION:
May the Board of County Commissioners of Gadsden County properly expend county funds for the purpose of hiring an independent certified public accountant to perform postaudits of its accounts and records as required by Ch. 79-183, Laws of Florida, in light of s. 11.076, F. S.?
SUMMARY:
The Board of County Commissioners of Gadsden County is required by law to, and may properly, expend county funds for the costs of postaudits required by s. 11.45(3)(a)3., F. S., to be performed by independent certified public accountants retained by the county for that purpose.
Section 11.076(1) and (2), F. S., provides in pertinent part:
 (1) Any general law, enacted by the Legislature after July 1, 1978, which requires a municipality or county to perform an activity or to provide a service or facility, which activity, service, or facility will require the expenditure of additional funds, must include an economic impact statement, as defined in s. 11.075 . . . and must provide a means to finance such activity, service, or facility. . . . Except that, where the Legislature determines that a general law serves both state and local objectives, a means to partially finance such activity, service, or facility may be provided by the Legislature. . . . No subsequent legislation shall be deemed to supersede or modify any provision of this act, whether by implication or otherwise, except to the extent that such legislation shall do so expressly; reasons for legislative deviation from this section shall be stated with particularity in the preamble of the act.
 (2) This act shall not apply to any general law under which the required expenditure of additional local funds is incidental to the main purpose of the law. (Emphasis supplied.)
Subsection (3) of s. 11.45, F. S., as amended by s. 2, Ch. 79-183, Laws of Florida, in pertinent part provides:
 (3)(a)2. The Auditor General may at any time make postaudits and performance audits of the accounts and records of all governmental entities created pursuant to law. The postaudits and performance audits referred to in this subparagraph shall be made whenever determined by the Auditor General, whenever directed by the Legislative Auditing Committee, or whenever otherwise required by law or concurrent resolution.
 3. Each local governmental entity created pursuant to law, for which entity a postaudit was not performed pursuant to subparagraph 1. or subparagraph 2. . . . shall require that an annual postaudit of its accounts and records be completed, within 6 months after the end of its respective fiscal year, by an independent certified public accountant retained by it and paid from its public funds.
 4. Any postaudit required to be performed under subparagraph 3. shall be submitted to the Auditor General no later than 7 months after the end of the fiscal year of the governmental entity . . . .
 5. The Auditor General, in consultation with the Board of Accountancy, shall review all audits completed for local units of government by an independent certified public accountant.
 (5) The Auditor General shall at least every 2 years make a performance audit of the local government financial reporting system required by this subsection; ss. 23.0115, 165.091, and 189.001-189.009; and part VII of chapter 112, and part III of chapter 218. . . . (Emphasis supplied.)
Your inquiry suggests that the requirement in s. 11.45(3)(a)3., F. S., that a county for which a postaudit has not been performed pursuant to subparagraph 2. pay from county funds for such postaudit by an independent certified public accountant retained by the county for that purpose, conflicts with s. 11.076, F. S. (1978 Supp.), brought into the statutes by Ch. 78-274, Laws of Florida, since the Legislature failed to provide any means to finance such postaudits.
The general rule of law, absent constitutional limitations, the that one legislature cannot bind to limit or enlarge the general powers of a subsequent legislature or inhibit it from amending or repealing any legislation so long as it does not act contrary to or inconsistently with any constitutional limitations on the legislative power in any given case. See 82 C.J.S. Statutes ss. 150, 243, 244, and 279; see also Trustees of the Internal Improvement Fund v. St. Johns R. Co., 16 Fla. 531 (1878); Gonzalez v. Sullivan, 16 Fla. 791 (1878); Kirklands v. Town of Bradley,139 So. 144 (Fla. 1932); Sovereign Camp. W. O. W. V. Lake Worth Inlet Dist. of Palm Beach County, 161 So. 171 (Fla. 1935); State v. Board of Public Instruction of Dade County, 170 So. 602 (Fla. 1936); Tamiami Trail Tours, Inc. v. Lee, 194 So. 305 (Fla. 1940); Ware v. Seminole County, 38 So.2d 432 (Fla. 1949); Straughn v. Camp, 293 So.2d 689 (Fla. 1974); and AGO 055-82. Section 1, Art. III, State Const., vests the legislative power of the state, and, unless elsewhere limited in and by other constitutional provisions, the legislative power to enact, repeal, amend, alter, or modify laws is supreme and unrestricted. (A statute cannot be judicially declared beyond the power of the Legislature to enact, unless some provision of the Constitution which is in conflict with it can be specifically pointed to. Thursby v. Stewart,138 So. 742, 749 [Fla. 1931].) I am unaware of any constitutional limitations on the power to legislate contrary to s. 11.076, F. S. Thus, the 1979 Legislature was not in any event bound or limited by the provisions of s. 11.076, F. S. (1978 Supp.).
However, apart from the foregoing considerations, I do not apprehend that Ch. 79-183, Laws of Florida, or s. 2 thereof (s.11.45(3)(a) and (d), F. S.), does conflict with s. 11.076, F. S. (1978 Supp.). Chapter 79-183 is `[a]n act relating to state and local government,' and creates the Local Governmental Financial Emergency and Accountability Act. This act is not confined to local governments or local purposes, but deals with, grants authority to, imposes duties upon, and concerns state agencies and officers, as well as counties, municipalities, and special districts, and serves both state and local purposes. The Auditor General is, by s. 2, Ch. 79-183, authorized, but not required, to make postaudits and performance audits of the counties and other local governmental entities whenever he determines to do so, whenever directed by the Legislative Auditing Committee, or whenever required by the Legislature by statute or concurrent resolution at state expense. The Auditor General, in consultation with the State Board of Accountancy, reviews all audits completed for local governmental entities by independent certified public accountants. At least every 2 years, the Auditor General is required to make a performance audit of the local government financial reporting system required by s. 11.45(3) and other designated laws. Section 11.076(1) excepts from the operation thereof general laws serving both state and local objectives or purposes and authorizes, but does not require, the Legislature to provide a means to partially finance such dual state and local purposes. Further, s. 11.076(2) provides that the section does not apply to any general law under which required expenditures of additional local funds are incidental to the main purpose of any such general law. Chapter 79-183 thus serves both a state and local purpose for which the Legislature may, pursuant to s. 11.076, provide partial financing or funding. Moreover, the act's requirement that the county or other local governmental entities pay the cost of those audits not performed (in the Auditor General's or Legislature's discretion) by the Auditor General is not the primary purpose of Ch. 79-183 but is only incidental to the several purposes of that law including, but not limited to, the Auditor General's review of all audits; performance audits of the local government financial reporting system; and the duties and functions of the Legislative Auditing Committee and other state agencies and officers under Ch. 79-183. If any irreconcilable conflict does in fact exist between Ch. 79-183, and s. 11.076, given the constitutionally unrestrained power of the Legislature to alter or repeal that preexisting law, Ch. 79-183, being the later or last enacted law, must prevail over s. 11.076 and controls the instant question. See Ideal Farms Drainage District v. Certain Lands, 19 So.2d 234 (Fla. 1944); State of Florida v. City of Boca Raton, 172 So.2d 230 (Fla. 1965); and State v. Young, 357 So.2d 416 (Fla. 1978). It must be presumed that the Legislature had knowledge of the provisions of s. 11.076 when it enacted ch. 79-183 (see Collins Inv. Co. v. Metropolitan Dade County, 164 So.2d 806 [Fla. 1964]; Dickerson v. Davis,224 So.2d 262 [Fla. 1969]; City of Punta Gorda v. McSmith, Inc.,294 So.2d 27 [Fla. 1974]; Williams v. Jones, 326 So.2d 425 [Fla. 1975]; and Woodgate Development Corp. v. Hamilton Inv. Trust,351 So.2d 14 [Fla. 1977]) and intended Ch. 79-183 to prescribe the governing rule insofar as it concerns the several subject matters set forth therein. Cf. DeConingh v. City of Daytona Beach,103 So.2d 233 (Fla. 1958), and Beasley v. Coleman, 180 So. 625 (Fla. 1938). Moreover, in the course of passage of Ch. 79-183, a proposed amendment thereof to require the state to provide a means to finance the costs of postaudits mandated by s. 11.45(3)(a)3. was defeated. See Journal of the House of Representatives, p. 172, April 9, 1979.
Applying the cited statutory provisions and rules of law discussed above to your specific question, it is my opinion that the Board of County Commissioners of Gadsden County is required by law to and may properly expend county funds for the costs of postaudits required by s. 11.45(3)(a)3., F. S., to be performed by independent certified public accountants retained by the county for that purpose.
Prepared by:
John W. Williams Assistant Attorney General